## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

**RUDY CASTANEDA,**

     *Plaintiff*,

**v.**                              **Case No. SA-24-CV-0718-JKP**

**RODOLFO RAMON FRAUSTO-RECIO;**
**FALCON INSURANCE COMPANY;**
**OFFICER DANIEL M. RAMIREZ, JR.;**
**SGT. JOHN DOE; and SAN ANTONIO**
**POLICE DEPARTMENT,**

     *Defendants.*

## ORDER ACCEPTING REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Before the Court is a *Report and Recommendation of United States Magistrate Judge* (ECF No. 3) ("R&R"), filed on July 23, 2024. The Magistrate Judge recommends that the Court (1) dismiss this action under 28 U.S.C. § 1915(e) and (2) bar Plaintiff from filing future actions in the Western District of Texas without obtaining prior approval of a district or magistrate judge. Plaintiff has timely filed objections to the R&R. *See* ECF No. 7.

The District Court has reviewed *de novo* those portions of the recommendation to which objection was made and reviewed the remaining portions for clear error. Finding no error, the Court **ACCEPTS** the R&R. While many of the filed objections do not warrant express consideration, the Court does address certain matters. But some brief background facts are warranted to first put this case in context.

This case concerns an accident and subsequent events that occurred on September 23, 2022. *See* ECF No. 1-1 (proposed complaint) at 5. As described by Plaintiff:

On September 23, 2022, Plaintiff was traveling Eastbound on the Southside of the sidewalk, on his way to the 7-Eleven convenience store. Plaintiff was traveling on his bicycle. Traffic was normal at that time for that street. Plaintiff arrived and

stopped at a driveway between the Chase Bank and Southwest mall on SW Military Dr. Plaintiff noticed a male sitting in his truck by himself supposedly waiting for traffic to ease up.

Plaintiff looked at the Defendant and motioned him to go but he didn't budge. Plaintiff then proceeded "all-the-while" thinking that he would have to go around the front end of the truck because his front end of the truck was beyond the sidewalk. A look at the police report would indicate that the truck was beyond the sidewalk.

As Plaintiff motioned forward on his bike, Defendant began to move forward and began running over Plaintiff. . . . Plaintiff tried to pound his hand on the truck's hood, but all the Defendant could do was, look over through his window and continue to move his truck. There were two persons on the opposite side of the driveway, these persons were busy yelling at the man that someone was under his truck.

As Plaintiff tried to get up, he couldn't because of his disability and was given a hand by the male and yet he still couldn't get up and was offered a woman's hand, until he was finally able to get up. Plaintiff noticed that this woman had been recording the entire incident with her phone and also when she tried to help Plaintiff get up. But the Police by Officer Ramirez did not include anything about ex-policeman's story only the woman's report which stated that the lady's story coincided with Defendant's story.

*Id*. at 5-6. He later alleges: "Plaintiff first saw injury when he was struck by a truck when the driver ignored Plaintiff on his bike and if it had not been other people yelling at the driver Plaintiff would have been run over." *Id*. at 12.

Despite the incident occurring in September 2022, Plaintiff alleges no medical treatment until X-rays were taken on July 9, 2023. *See id*. at 13. Plaintiff had follow-up reviews in October 2023 for "left knee pain" and "left knee recurrent effusion." *Id*. According to Plaintiff, the doctor "assessed the problem that Plaintiff fell on the ground while riding his bike after being run over by a truck." *Id*. Plaintiff continued to seek medical review in November 2023, February 2024, and twice in March 2024, when an MRI revealed a "Multidirectional tear." *Id*.

From this incident, Plaintiff appears to sue the driver and his insurance company, two officers who arrived on the scene from the San Antonio Police Department ("SAPD"), and SAPD itself. *Id*. at 2. He asserts jurisdiction 28 U.S.C. § 1331 through 42 U.S.C. § 1983, the United

States Constitution, and the American with Disability Act. *Id*. He asserts that SAPD has discriminated against him in violation of § 1983, then proceeds to discuss provisions of the Rehabilitation Act and its definition of a handicapped individual. *Id*. at 2-3. He asserts that he had "such an impairment as could be evidenced when he was completely under the front end of Defendant's truck and could not get up and required help from two bystanders." *Id*. at 3. He also states that when he "told Officer Ramirez what occurred," he (Plaintiff) "was in shock and was a Diabetic." *Id*. He maintains that he "has been 'physically handicapped' since 2008." *Id*. He concludes this portion of his complaint by asserting that he was discriminated against under 42 U.S.C. § 12182(a). *Id*. He then sets out some caselaw regarding private conspiracies and states that "the San Antonio Police conspired with the initial defendant to avoid processing a violation of the laws by not doing their jobs under 42 U.S.C. § 1983." *Id*. at 4.

On the cover of his proposed complaint, Plaintiff identifies the nature of his claims as: "Violation of Texas Public Laws, Vehicle Negligence, Medical Negligence, Equal Protection of the . . . Laws and Statutes, pursuant to 42 U.S.C. 1983 and 14th Amendment Clause, Violation of (ADA) Americans with Disabilities Act Protections, and Due Process." *Id*. at 1. He later sets out three claims. *See id*. at 4-14.

In his "Claim #1," Plaintiff lists a litany of federal and state statutes before discussing a driver's duty to exercise due care "to avoid collision with a pedestrian on a roadway." *Id*. at 4-5. Plaintiff alleges that he "was that pedestrian on a roadway." *Id*. at 5. He also contends that Tex. Transp. Code § 545.256 requires drivers to yield the right of way to pedestrians to avoid a collision when emerging from an alley, driveway, or building in a business or residence district. *Id*. He contends that when the driver hit him, the driver violated Tex. Transp. Code § 545.428, which according to Plaintiff states that a person commits an offense "if the person with criminal negligence . . . causes bodily injury to a pedestrian or person operating a bicycle." *Id*.

3

As to this claim, Plaintiff omits critical information regarding both transportation code provisions. Yielding the right-of-way to a pedestrian is only one aspect of § 545.256. Drivers must "(1) stop the vehicle before moving on a sidewalk or the sidewalk area extending across an alley or driveway"; (2) yield the right-of-way as noted by Plaintiff; and "(3) on entering the roadway, yield the right-of-way to an approaching vehicle." *See* Tex. Transp. Code § 545.256. Plaintiff makes no allegation that the driver failed with respect to the first element—from Plaintiff's alleged facts when he arrived at the driveway, the driver was already sitting there in his truck waiting for a chance to proceed. Plaintiff who had stopped riding his bike on the sidewalk decided to ride his bike in front of the stopped truck. Plaintiff also neglects to mention that § 545.428(b) requires that the driver to "operate[] a motor vehicle within the area of a crosswalk." Not only does his proposed complaint contain no allegation that he was in a crosswalk at the relevant time, but such allegation appears precluded by the few facts that he does allege.

In his "Claim #2," primarily arising under § 1983, Plaintiff sets out various statutes, caselaw , and ordinances to discuss conspiracy theory and municipal liability. *See id*. at 6-9. He sets out an ordinance prohibiting driving, parking, or standing any vehicle upon any sidewalk. *See id*. at 7. He also sets out various duties of police officers. *Id*. at 9.

In his "Claim #3," Plaintiff continues his recitation of various legal principles, including qualified immunity, limitation on amount of liability, governmental immunity, Texas insurance requirement to cover bodily injury and personal damage in case of an accident, and requirements for officers to take certain actions. *Id*. at 10-14. Related to this claim, Plaintiff states that a witness made statements to an unidentified Sergeant who should have made a written report and shared it with Plaintiff. *Id*. at 14. By failing to do so, Plaintiff asserts that the Sergeant failed to "follow the rules of the San Antonio Police Department and because of that, Plaintiff had to file this lawsuit." *Id*. He asserts SAPD is responsible to him "due to a violation of their Rules and the

4

Law which violated the Fourteenth Amendments and Procedural Due Process Clause." *Id*.

While the proposed complaint of Plaintiff contains caselaw and statutory provisions that he seems to believe applies to the limited facts that he provides, his complaint essentially amounts to conclusory assertions of conspiracy, municipal liability, and violations of the Constitution. The Magistrate Judge accurately summarizes the facts alleged by Plaintiff. *See* R&R at 2-3. She persuasively presents why Plaintiff has not stated any federal claim, nor shown diversity jurisdiction for any claim of negligence he may have against the driver of the truck. *Id*. at 3-5. She then explains that, while pro se plaintiffs are generally granted an opportunity to cure pleading deficiencies before dismissal, Plaintiff's "situation requires a different approach" due to five prior dismissals against him and prior warnings about imposition of sanctions if he continues to file baseless actions. *See id*. at 5-6. She thus recommends that the Court dismiss Plaintiff's proposed complaint under § 1915(e) without permitting him to file a more definite statement. *Id*. at 6.

The Court now turns to Plaintiff's objections that warrant brief comment. First, at numerous points, Plaintiff refers to the Magistrate Judge as "counsel." To avoid any confusion about this matter, the Magistrate Judge is not in any respect counsel for Plaintiff or any litigant. Magistrate Judges have certain duties and obligations, including screening complaints filed by plaintiffs who seek to proceed *in forma pauperis* ("IFP"). That was the role of the Magistrate Judge in this case.

More substantively, Plaintiff objects that he "repeatedly alleges he was discriminated against due to his disabilities" and that the SAPD conspired "to avoid prosecuting" Frausto-Recio for traffic violations." Such objection continues to state discrimination and conspiracy in conclusory terms. For the most part, Plaintiff's objections are simply a recitation of the caselaw and statutory provisions that he had previously set forth in his proposed complaint. As the Su-

preme Court has made clear, plaintiffs must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's proposed complaint is precisely the type of pleading that does little more than provide labels, conclusions, and formulaic recitation of the elements. The few interspersed factual allegations are insufficient to plausibly state any federal claim.

Plaintiff also objects to the Magistrate Judge recommending that the Court lacks jurisdiction over his negligence claim. And, in general, the issue would not be subject matter jurisdiction but instead supplemental jurisdiction under 28 U.S.C. § 1367. But when determining whether to permit the filing of a proposed complaint in an IFP case, § 1367 will provide little basis for filing the complaint when no federal claim survives the screening process. In such circumstances, there is no error in considering whether the state claims are better considered under diversity jurisdiction. When "there is no current federal claim upon which supplemental jurisdiction may attach," the issue is whether there is subject matter jurisdiction, not supplemental jurisdiction. *Valdez v. United States*, No. SA:18-CV-0558-JKP, 2019 WL 6213159, at *4 (W.D. Tex. Nov. 21, 2019).

Furthermore, the issue can be subject matter jurisdiction for those cases that are so completely devoid of a substantial federal claim despite reliance on federal law. "It is well settled that a federal court has the power to resolve a pendent state issue only if a substantial federal question is also present." *Raymon v. Alvord Indep. Sch. Dist.*, 639 F.2d 257, 257 (5th Cir. Unit A Mar. 1981). "In the absence of diversity of citizenship, it is essential that a substantial federal question be presented to support jurisdiction." *Jolly v. Klein*, 923 F. Supp. 931, 941 (S.D. Tex. 1996) (citing *Hagans v. Levine*, 415 U.S. 528, 536-37 (1974)).

A plaintiff must allege "facts to show that [he or] she has a substantial claim under" federal law, "and the mere citation to [federal] statutes fails to show that any claim [asserted] arises under federal law." *Kahclamat v. Nash*, No. 3:18-CV-464-G-BN, 2018 WL 1515126, at *2 (N.D.

Tex. Mar. 6, 2018) (recommendation of Mag. J.) *accepted by* 2018 WL 1513655 (N.D. Tex. Mar. 27, 2018). "A complaint that alleges the existence of a frivolous or insubstantial federal question is not sufficient to establish jurisdiction in a federal court." *Raymon*, 639 F.2d at 257. The failure to establish a substantial federal question in conjunction with a failure to "advance[] an argument that diversity jurisdiction exists," by alleging "facts to establish that there is complete diversity of citizenship between the parties" results in a lack of subject matter jurisdiction. *See Kahclamat*, 2018 WL 1515126, at *2-3.

"Even when there is a purported federal claim asserted, courts may dismiss for lack of jurisdiction when the claim is 'immaterial and made solely for the purposes of obtaining jurisdiction' or is 'insubstantial and frivolous.'" *Mega Vape, LLC v. City of San Antonio*, 455 F. Supp. 3d 299, 306 (W.D. Tex. 2020) (quoting *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. May 1981)). As the Fifth Circuit stated long ago:

> Federal courts are proper forums for the resolution of serious and substantial federal claims. They are frequently the last, and sometimes the only, resort for those who are oppressed by the denial of the rights given them by the Constitution and laws of the United States. Fulfilling this mission and the other jurisdiction conferred by acts of Congress has imposed on the federal courts a work load that taxes their capacity. Each litigant who improperly seeks federal judicial relief for a petty claim forces other litigants with more serious claims to await a day in court. When litigants improperly invoke the aid of a federal court to redress what is patently a trifling claim, the district court should not attempt to ascertain who was right or who was wrong in provoking the quarrel but should dispatch the matter quickly.

*Raymon*, 639 F.2d at 257.

Under the facts alleged in this case, the Magistrate Judge could find the asserted federal claims so insubstantial as to not confer subject matter jurisdiction or merely find the factual allegations insufficient to state a plausible federal claim. Even though a failure to provide more than labels, conclusions, and formulaic recitation of the elements of various federal claims is a basis for finding that a plaintiff fails to state a claim upon which relief can be granted, the same failure

can support going further and finding that a particular case simply fails to establish a substantial federal question. Having found that asserted federal claims "all fail as a matter of law," the Magistrate Judge reviewed the proposed complaint for allegations sufficient to establish diversity jurisdiction and found the complaint lacking in that regard.

The Court agrees that Plaintiff does not provide facts to establish diversity jurisdiction. And as stated above, Plaintiff has also failed to establish a substantial federal question. The combined effect means that this Court lacks jurisdiction over the proposed complaint. Furthermore, it is within a court's discretion to dismiss an action as frivolous due to jurisdictional defects. *See Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 941 (5th Cir. 1999) (citing *Oltremari v. Kan. Soc. & Rehabilitative Serv.*, 871 F. Supp. 1331, 1333 (D. Kan.1994) ("A complaint is frivolous within the meaning of § 1915(d) [now § 1915(e)], if its subject matter is outside the jurisdiction of the court."); *Johnson v. E. Band Cherokee Nation*, 718 F. Supp. 6, 6 (N.D.N.Y. 1989) ("When a court does not have jurisdiction to hear an action, the claim is considered frivolous.")). Thus, the Magistrate Judge could properly recommend that the Court dismiss this case under § 1915(e).

Plaintiff next objects to the Magistrate Judge's choice to not provide him an opportunity to file a more definite statement. But rather than provide additional factual details to show that had he been given such opportunity he would have stated a federal claim that would survive the § 1915(e) screening, Plaintiff takes the opposite approach and argues that his complaint is not so vague or ambiguous as to require a more definite statement. The Court disagrees with Plaintiff. As already discussed his proposed complaint lacks factual allegations to either state a substantial federal question or a plausible federal claim or to support diversity jurisdiction for any state claim. As the Magistrate Judge properly notes, the general practice in such circumstances is to accord a pro se plaintiff an opportunity to amend. But that practice is not an absolute for all cir-

cumstances. The Court finds no error on the existing circumstances in the Magistrate Judge's choice to forego an opportunity for amendment. Plaintiff's objections reveal no further factual allegations that would present any plausible federal claim. When a litigant has stated his best case, courts need not provide an opportunity for amendment.

Furthermore, the litigation history of particular litigants may also be relevant to whether the Court provides an opportunity for amendment. Here, Plaintiff had five prior federal actions filed in the San Antonio Division of the Western District of Texas.

His first case (Case No. 5:21-CV-0632-JKP) resulted in an order requiring him to provide a more definite statement (doc. 3); an amended complaint to provide the more definite statement (doc. 6); a recommendation of dismissal (doc. 7); and ultimate dismissal (doc. 10). Despite being accorded an opportunity to amend his factual allegations, Plaintiff was still unable to state a claim that survived screening under 28 U.S.C. § 1915(e).

His second case (Case No. 5:22-CV-1353-FB) resulted in an order to show cause why the case should not be dismissed (doc. 3), a motion by Plaintiff for a more definite statement (doc. 8), a response to the show cause order (doc. 9), an order granting Plaintiff leave to file an amended complaint (doc. 10), an amended complaint (doc. 11), a recommendation of dismissal (doc. 12), and an order accepting that recommendation (doc. 16). Again, despite being provided an opportunity to amend, Plaintiff was still unable to state a claim that survived screening. In this second case, the Court provided Plaintiff notice "that the repeated filing of frivolous IFP applications may result in future sanctions," including "assessing monetary fines or designating Plaintiff Castaneda as a 'vexatious litigant' and enjoining him from filing any civil lawsuit in this district without first obtaining permission." Doc. 16.

His third case (Case No. 5:23-CV-0807-JKP) resulted in an order directing him to file a more definite statement (doc. 3), a more definite statement (doc. 6), a motion to dismiss filed by

the lone defendant (doc. 19), and an order granting the motion to dismiss (doc. 25). The Court ultimately dismissed Plaintiff's claims as untimely, unexhausted, barred by res judicata, and for failure to allege enough facts to state a plausible claim of retaliation or age/race discrimination. Doc. 25. Although Plaintiff was accorded an opportunity to provide additional facts, he still failed to state a claim that survived the motion to dismiss. And given his prior cases and sanction warning, the Court restated that "[i]f Castaneda continues to file duplicative, non-meritorious lawsuits, the Court may impose sanctions, including designation as a vexatious litigant." *Id*.

His fourth case, (Case No. 23-CV-1218-JKP) resulted in an order requiring him to provide a more definite statement (doc. 3); a more definite statement (doc. 7); a motion to dismiss filed by the lone defendant (doc. 12), and an order granting the motion to dismiss (doc. 14). Like his prior cases, Plaintiff failed to allege sufficient facts even with the opportunity to do so.

His fifth case (Case No. 5:24-CV-0509-XR) proceeded down this familiar path, resulting in an order requiring him to provide a more definite statement (doc. 3); a more definite statement (doc. 5); a recommendation of dismissal (doc. 6); and an order adopting the recommendation (doc. 11). The recommendation included the following:

> The District Court should take Plaintiff's litigation history into consideration in resolving this case and evaluating his future lawsuits. Plaintiff is warned that the undersigned will also consider his pattern of filing in evaluating any future lawsuits. Furthermore, filing future baseless suits could result in the imposition of sanctions, including a pre-suit injunction requiring Plaintiff to seek permission before filing a lawsuit in this Court.

Doc. 6. Despite the opportunity to bolster his case with enough facts, Plaintiff failed to do so.

Thus, Plaintiff has filed five prior cases asserting various claims that have simply not passed screening or failed to state a claim under Fed. R. Civ. P. 12(b)(6) despite affording him opportunities to amend. In light of this litigation history, the Magistrate Judge did not err in taking a different approach to allowing an amendment. In this case, Plaintiff alleges so few facts that he fails to establish a substantial federal question. He relies on labels, conclusions, and for-

mulaic recitation of elements of various claims without adequate factual support. Given his litigation history and the sparse facts alleged in this case, the Court may properly consider that his proposed complaint states his best case and any attempt to amend would fail to provide enough facts of any federal claim.

Plaintiff then voices his disagreement with the Magistrate Judge proposing sanctions. In doing so, he states that he has only brought three cases in the Western District of Texas. But as shown by the preceding paragraphs, Plaintiff commenced five cases in this Court before filing the instant case. That the three prior cases handled by the undersigned relate to the same two defendants provides no basis for leniency or for counting the cases as one. Pursuing two separate cases after the dismissal of the first exhibits litigation abuse rather than a reason for leniency. As the Magistrate Judge points out, Plaintiff has been warned three times while litigating in the Western District of Texas that the Court may sanction him for continued litigation abuses. Despite two of those warnings being issued prior to Plaintiff filing this case, Plaintiff commenced this case regardless. The Court agrees that sanctions are warranted at this juncture.

Plaintiff objects to being designated a vexatious litigant. He falsely claims to have pled only three cases in Texas. He asserts that if his "wife did not require help in moving to Texas, Plaintiff would still be filing his cases in a more liberal state in the West Coast or elsewhere." He "takes umbrage at how these Judges have taken to [his] cases" and argues that he should not "be assigned vexatious status" for "employing his rights." To be clear, if the Court designates him as a vexatious litigant, it will not be for employing his rights, it will be for abusing his right to access the courts by engaging in sanctionable conduct. While litigants have a right to access the court, courts may restrict such access for sanctionable conduct.

Plaintiff states that he must file without counsel "because he knows each case better than most lawyers, does not work in a big firm or has a state ID number and cannot afford to see his

cases through despite dishonesty of the Judges." The Court does not know whether this means that Plaintiff is an attorney from another jurisdiction or simply one who professes knowledge in the law. While his filings do exhibit some understanding of the law, his cases also exhibit missed nuances in various statutory provisions and many conclusory statements of the law without enough facts to support claims that might arise under cited statutory provisions. His filed cases have either failed to survive screening required by 28 U.S.C. § 1915(e) or failed to survive motions to dismiss after a defendant has been served. Prior to filing this case, he was warned in two prior cases about available sanctions should he continue engaging in such filings.

Unquestionably, "federal courts have inherent authority to take steps to protect the integrity of the court from vexatious litigants." *Montez v. United States Fed. Courthouse*, No. SA-22-CV-01301-JKP, 2023 WL 2072416, at *1 (W.D. Tex. Feb. 17, 2023). They have inherent powers "deemed necessary to protect the efficient and orderly administration of justice and those necessary to command respect for the court's orders, judgments, procedures, and authority." *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993) (per curiam). These powers include "the power to levy sanctions in response to abusive litigation practices." *Id*. Furthermore, it is well-established that a recognized "need to curtail further frivolous and malicious filings" provides a legitimate basis for a court to invoke "its general supervisory power to control its docket." *See Green v. Carlson*, 649 F.2d 285, 287 (5th Cir. Unit A 1981) (appending Mem. & Order dated Apr. 27, 1981). Such supervisory power permits courts to place filing restrictions on litigants. *Id.*

"Federal courts have the power to enjoin plaintiffs from future filings when those plaintiffs consistently abuse the court system and harass their opponents." *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 190 (5th Cir. 2008). An "injunction against future filings must be tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 360 (5th Cir. 1986). Such restrictions

may even be imposed on litigants who proceed without counsel, "for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Id.* at 359. In addition, it has long been held that courts "impose the least severe sanction adequate" to accomplish the purposes of sanctions, *Akin v. Q-L Invests., Inc.*, 959 F.2d 521, 535 (5th Cir. 1992), which include deterrence, compensation, and punishment.

Due to Plaintiff's litigation history and prior warnings, the Magistrate Judge recommended that the Court impose a prefiling injunction against him. "Courts do not lightly impose sanctions that require a litigant to obtain judicial approval before filing future actions." *Silver v. City of San Antonio*, No. SA-19-MC-1490-JKP, 2020 WL 3803922, at *5 (W.D. Tex. July 7, 2020). As recognized by the Fifth Circuit, a prefiling injunction is "the most stringent sanction" that courts may impose upon abusive litigants. *Mendoza v. Lynaugh*, 989 F.2d 191, 196 (5th Cir. 1993). But courts may impose such a harsh sanction after adequately warning of such sanction and considering whether lesser sanctions would be sufficient. *Id*. at 196-97. "Sanctions requiring judicial approval before filing an action are 'designed to avoid the waste of increasingly scarce judicial resources.'" *Silver*, 2020 WL 3803922, at *5 (quoting *Mayfield v. Collins*, 918 F.2d 560, 561 (5th Cir. 1990)). "Of course, such resources have become even more scarce in the thirty years since *Mayfield*" and in the interim, "Congress has provided several statutory avenues to address abusive litigants." *Id*.

Before issuing a prefiling injunction, courts must weigh all relevant circumstances, including:

> (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Baum*, 513 F.3d at 189. Naturally, when punishing abusive or harassing conduct, courts "must use the least restrictive sanction necessary to deter the inappropriate behavior." *Krim v. First City Bancorporation of Tex. Inc. (In re First City Bancorporation of Tex. Inc.)*, 282 F.3d 864, 867 (5th Cir. 2002) (per curiam). Further, "the imposition of sanctions must not result in total, or even significant, preclusion of access to the courts." *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 882 n.23 (5th Cir. 1988) (en banc).

Courts have an assortment of sanctions that they may impose in appropriate circumstances. But choices dwindle when the sanctionable conduct transcends a given case. Imposing a prefiling injunction is one way to address vexatious, harassing, or duplicative lawsuits or other misconduct that spans multiple cases. *See Baum*, 513 F.3d at 189. Another way is to bar a litigant from filing additional actions until paying a monetary fine. *See Thomas*, 836 F.2d at 882 n.22 (discussing such sanction). Regardless, "any type of sanction, monetary or otherwise, should not result in preclusion of access to the courts." *Id*. at 882 n.23.

Here, given Plaintiff's financial situation, as shown by his IFP application, a monetary sanction—generally regarded as one of the least severe sanctions—could pose an even greater obstacle for Plaintiff to proceed with future litigation. In cases such as this, when sanctions are warranted for continued litigation abuses through multiple cases, courts may make future filings or litigation contingent on the payment of a monetary sanction. But such a sanction could prove to be nearly impassable for a financially strapped litigant. Knowing Plaintiff's financial situation likely impacted the Magistrate Judge's choice of sanction. The Magistrate Judge also knew that Plaintiff had been twice warned that the Court could impose such severe sanction, and that Plaintiff kept filing cases without adequate factual support.

Plaintiff's litigation history supports imposing a prefiling injunction. Three of his five cases prior to this one involved the same defendants and subject matter. The other two cases

simply failed to allege enough facts for any claim to survive screening under 28 U.S.C. § 1915(e) despite opportunities to provide additional facts. This case has proceeded down a similar path, albeit without an opportunity to bolster the factual allegations. Filing cases without an adequate factual or legal basis to survive screening can constitute vexatious and harassing conduct. This is especially true when the litigant has been warned multiple times that the Court may impose sanctions for such conduct. While Plaintiff's litigation history may not be as extensive or abusive as some cases in which courts have imposed a prefiling injunction, it is still sufficient to support imposing such injunction.

Plaintiff, furthermore, had no good faith basis for pursuing the two cases that duplicated his first case. As to his other two prior cases, his failure to provide enough facts to survive screening exhibits a lack of a good faith basis for them. The instant case indicates a lack of good faith basis for any federal claim or any good faith basis to proceed with any state claim in federal court. While, other than the two duplicate cases, the Court does not view his litigation as "simply intended to harass," it still finds this factor supports a prefiling injunction given the prior warnings to Plaintiff.

This is Plaintiff's sixth IFP case filed in the Western District of Texas. Four of these (counting this one) have not survived screening. The two others did not survive motions to dismiss and, given their duplicative nature, they could have very well failed at screening. Given the screening requirements, these cases burden courts more than most non-IFP cases. Such cases take valuable time of the assigned magistrate judges to review the IFP application and screen the proposed complaint. This effort is essentially doubled when plaintiffs are provided an opportunity to bolster their factual allegations and hone their legal bases through an amended complaint or a more definite statement. A failure to provide enough facts to survive screening results in a recommendation of dismissal and additional judicial time reviewing objections before making a fi-

nal determination to dismiss or not. Served cases without enough facts to survive a motion to dismiss not only burden the courts but also the parties required to respond to the complaint. The undersigned has first-hand experience with four of Plaintiff's cases and finds a significant burden on the courts resulting from his IFP cases. This factor favors imposing a prefiling injunction.

Unless the adequacy of alternative sanctions favors a lesser sanction, the four factors identified in *Baum* favor imposing a prefiling injunction. As already discussed a monetary sanction could prove more severe than the recommended prefiling injunction. The Court finds alternative lesser sanctions inadequate under the circumstances. In the present circumstances, the Court accepts the recommendation and finds the prefiling injunction to be the least severe of available sanctions. At some point, factually insufficient litigation must cease.

After weighing all relevant circumstances including the four *Baum* factors, the Court finds that a prefiling injunction is warranted for Plaintiff continuing to file federal cases without a proper factual basis after being warned that a prefiling injunction could be imposed for such conduct. The Court, therefore, imposes a prefiling injunction against Plaintiff.

Henceforth Plaintiff may not commence any new civil action pro se and *in forma pauperis* in the Western District of Texas without obtaining judicial approval for his proposed case. This approval requirement does not apply if he pays the filing fee or if he retains an attorney who files the case on his behalf. Nor does it apply to state actions he may file. *See Baum*, 513 F.3d at 191 (recognizing that state courts "are capable of taking appropriate action on their own"). But it will apply to IFP actions commenced in other courts and transferred or removed to the Western District of Texas. In those contexts, Plaintiff shall have thirty days from the date of the transfer or removal to file a motion seeking leave to proceed with the case in the Western District of Texas.

This required preapproval is more stringent than the normal IFP screening under 28

16

U.S.C. § 1915(e). *Silver*, 2020 WL 3803922, at *6 ("Naturally, because a judicial preapproval sanction or prefiling injunction typically provides an additional layer of review on actions filed *in forma pauperis* or by prisoners, the review certainly need not even reach the level required by the statutory screening mechanisms."). Under the IFP practices of this Court, this means that, should Plaintiff want to proceed with a new civil case IFP, he shall attach a copy of his proposed complaint to his IFP application as normal. But, in addition, he shall also file a separate motion to obtain leave of court to file the proposed pleading. The title of the motion is not critical, but it must be clear from the filing that Plaintiff is seeking judicial approval as required by the injunction set forth herein. Plaintiff, moreover, shall attach a copy of this order to his motion seeking leave.

Plaintiffs who cannot file a civil action without leave of court have the "burden to persuade the Court that it should allow [a] proposed filing to commence a new civil action." *Id.* at *1. In general, sanctioned litigants must

> show that the claims sought to be asserted have sufficient merit; that each defendant is properly included in the litigation; that the proposed filing is both procedurally and legally sound; that there is no obvious defense to asserted claims; that the claims are not brought for any improper purpose, such as harassment; and that the motion for leave as well as the proposed pleading complies with all relevant requirements set out in prior sanctions.

*Id.* It lies within "the Court's sound discretion" as to grant or deny requested leave. *Id.*

> Given the harshness of the preapproval sanction, the rarity in which it is imposed, and the recognized purpose to avoid wasting scarce judicial resources, sanctioned litigants often face an uphill battle to obtain requested leave to pursue a new civil action. Nevertheless, courts review each proposed case on its own potential merit, or lack thereof, and it is within the court's discretion as to how stringently it reviews each proposed new case. While a given case may present particularly egregious facts or a legal issue that warrants granting leave to preserve the legitimate rights of the individual seeking leave, courts are well within their considerable discretion to deny leave for procedural infirmities such as a failure to exhaust, apparent untimeliness, and issues with venue or joinder. Naturally, a court may deny leave on more substantive reasons, such as assertion of claims that are merely conclusory, lack merit, or lack sufficient facts to adequately determine whether the claim has merit. A sanctioned individual has no legitimate right to pursue a

17

procedurally defective complaint or one that contains claims that lack a sufficient factual basis to survive screening or a motion to dismiss. A sanctioned individual has no legitimate right to sue defendants without allegations showing their personal involvement.

. . .

An individual who has abused the judicial process to such an extent as to receive the harsh sanction of judicial preapproval for future actions has no basis to complain if the reviewing court or judge expects procedural compliance in all or nearly all respects, proper venue for the action, proper joinder of parties and claims, non-conclusory factual allegations, and a statement of facts sufficient to survive statutory screening and a motion to dismiss. If significant factual development appears warranted to survive screening, such need may of itself provide a basis for denying leave to file, although it remains within the discretion of a particular reviewing judge to provide an opportunity for further factual development. Furthermore, given the nature of a prefiling injunction, merely satisfying the minimal requirements to survive screening or a motion to dismiss may not always carry a sanctioned litigant's burden to persuade the Court that it should permit a proposed action to be filed.

*Id*. at *6.

As a procedural matter, a reviewing court may deny leave outright if Plaintiff fails to materially comply with the sanction order itself by not filing a separate motion for leave or failing to attach a copy of the sanction order. Procedurally, the reviewing court may find the motion for leave simply insufficient of itself to justify the requested leave to file. Once past those procedural hurdles, a review of the proposed pleading may provide adequate grounds to either deny or grant leave. This Court will not belabor the point, but it does stress to Plaintiff that a need to amend or for a more definite statement may of itself suffice to deny leave.

Finding no error upon a *de novo* review of those portions of the recommendation to which objection was made and reviewing the remaining portions for clear error, the Court **ACCEPTS** the *Report and Recommendation of United States Magistrate Judge* (ECF No. 3), filed on July 23, 2024. It **DISMISSES** this action under 28 U.S.C. § 1915(e) as recommended and will finalize such dismissal with a separate judgment dismissing this case. To the extent Plaintiff sought to pursue any state claims, this dismissal is without prejudice to him pursuing them in

state court.

Further, as recommended by the Magistrate Judge, the Court **SANCTIONS** Plaintiff by imposing a prefiling injunction upon him as set forth herein. It also **WARNS** Plaintiff that future abuses of the litigation process, including seeking leave to file factually insufficient claims or other similar conduct, may result in the imposition of additional sanctions including a monetary sanction payable to the Court or even a prohibition on his ability to proceed *in forma pauperis*. Even though Plaintiff's finances have historically allowed him to proceed *in forma pauperis*, future failed attempts to obtain leave consistent with the prefiling injunction imposed herein may result in appropriate, incremental monetary sanctions at the discretion of the reviewing court. And should a court deem it warranted under the totality of the circumstances, it may prohibit Plaintiff from proceeding *in forma pauperis*. Such a sanction may be especially harsh given Plaintiff's current financial circumstances. But should such a sanction be warranted, the court considering sanctions may weigh Plaintiff's then current financial circumstances while determining whether such a sanction significantly precludes his access to the courts.

**It is so ORDERED this 3rd day of October 2024.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**